# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1981

_____

United States of America,       *
                                     *

          Plaintiff-Appellee,     *

                                     *   Appeal from the United States
     v.                              *   District Court for the
                                     *   Southern District of Iowa.

Herminio Torres, Jr.,         *

                                     *

          Defendant-Appellant.   *

_____

Submitted: February 12, 2004
Filed: June 13, 2005

_____

Before BYE, HEANEY, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Herminio Torres, Jr., a drug felon who pleaded guilty to conspiracy to distribute drugs and distribution of a controlled substance, appeals the district court's[1] assessment of a two-level enhancement for possession of a dangerous weapon. The district court sentenced Mr. Torres to 120 months of imprisonment, the same minimum term it was required by statute to impose upon a repeat drug felon even without an enhancement. On appeal, Mr. Torres challenges the enhancement, arguing it will make him ineligible for early release should he be admitted to and complete the

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

Bureau of Prisons' (BOP) drug-treatment program. He also raises for the first time on appeal a sentencing issue that implicates the Sixth Amendment. Because the district court properly applied the enhancement and any error in sentencing did not affect his substantial rights, we affirm.

I

On May 25, 2002, a cooperating government informant visited Mr. Torres's residence and informed him a friend wished to purchase 1/4 pound of cocaine. Within earshot of the informant, Mr. Torres consulted in Spanish with his brother, Leonal Vela, and then turned to the informant and stated the price would be $3,200.

On May 31, 2002, the informant, acting as a middleman, took an undercover agent to Mr. Torres's residence to make a controlled purchase of 1/4 pound of cocaine. In the outer room of the residence, Mr. Torres signaled to the informant he preferred speaking to the informant alone and took him to a utility room in the back of the residence next to the kitchen. On the way there, the informant observed Mr. Vela sitting in the kitchen with a gun visible on his hip.

In the utility room, Mr. Torres asked the informant whether the buyer was an undercover agent and made the informant lift up his shirt to check for a wire. Mr. Torres stated he would deal only with the informant this time outside the presence of the buyer. Consequently, the informant went to the outer room to bring the $3,200 payment from the agent. Mr. Torres then requested an additional $100, stating the cocaine belonged to his brother and he (Mr. Torres) also wished to make some money off the transaction. After the informant returned with the $100, Mr. Torres tendered the drugs, and he and the informant discussed the prospect of executing a larger transaction in the future. Meanwhile, Mr. Vela went to the outer room and walked by the agent, still displaying the firearm on his hip.

On July 17, 2002, the undercover agent and other officers conducted a controlled purchase of 1.2 kilograms of cocaine from Mr. Torres, his brother Leonal, and three associates. As the transaction took place, Mr. Torres told the agent he had another deal for him in the future but the agent would have to trust him and take a trip with him and his brother to Chicago. With the transaction completed, the officers arrested Mr. Torres and the others. The authorities did not find any weapons on the suspects or in Mr. Torres's residence. Later, Mr. Vela stated Mr. Torres had asked him to watch his back during a "big one" and stated he was being paid $100 for his role in the deal.

Mr. Torres pleaded guilty to one count of conspiracy to distribute 500 grams or more of cocaine in violation 21 U.S.C. §§ 846 and 841(b)(1)(B) and two counts of distribution of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Pursuant to United States Sentencing Guidelines (U.S.S.G) § 2D1.1(b)(1), the district court imposed a two-level enhancement for possession of a dangerous weapon, finding Mr. Torres constructively possessed the gun during the first controlled purchase.

With the enhancement, the district court correctly calculated Mr. Torres's sentence at level 25, Criminal History Category V, resulting in a range of 100-125 months of imprisonment. The district court imposed a 120-month sentence, the minimum prison sentence Mr. Torres, as a repeat drug felon, was required to receive under 21 U.S.C. § 841(b)(1)(B). Thus, as a practical matter, the enhancement was without effect on the term of his sentence.

On appeal, Mr. Torres concedes he would have received the same prison sentence without the enhancement. He nevertheless challenges the enhancement, arguing that, under the BOP's current regulations, he will be ineligible for early release should he be admitted to and complete the BOP's drug-treatment program. The government urges us to decline review of this case because Mr. Torres will

receive the same sentence regardless of the decision we may reach on the merits of his claim. In the alternative, the government contends the district court properly assessed the enhancement. Reviewing the merits, we affirm.

II

This court has consistently declined review of a sentencing decision where the defendant would receive the same sentence if the decision were reversed. See United States v. Mayer, 130 F.3d 338, 339 (8th Cir. 1997); United States v. Baker, 64 F.3d 439, 441 (8th Cir. 1995); United States v. Simkins, 953 F.2d 443, 446 (8th Cir. 1992). The government argues we should likewise decline review of this case because Mr. Torres will receive the same 120-month sentence with or without the enhancement. In this appeal, however, Mr. Torres does not wish to vindicate a legal right to receive a shorter sentence from the sentencing court, but rather the right to be considered for early release by the BOP; he asks not for a shorter sentence, but for the opportunity to serve a shorter prison term. In essence, he argues the enhancement could have a prejudicial effect and so our decision would not amount to an exercise in futility.[2]

More compelling is the government's argument that Mr. Torres alleges a hypothetical injury. As the government explains, there is no guarantee Mr. Torres will ever be admitted to, or much less complete, the treatment program; thus it remains to be seen whether the enhancement will have a prejudicial effect. By this argument, we understand the government to mean this case is unripe for judicial review.

---

[2]We trace the Mayer line of cases to United States v. Bermingham, 855 F.2d 925, 932 (2d Cir. 1988), where the Second Circuit explained the unreviewability rule "should contribute substantially to the efficient administration of the guideline system."

The government's position gives rise to a legal conundrum for which we find scant precedent. Mr. Torres's claim arguably lacks maturity because several conditions must be fulfilled before the harm he alleges becomes cognizable – he must be admitted to the drug-treatment program, he must complete his rehabilitation, and the BOP's regulations must remain effective. Only then will the BOP be in a position to deny him the early release because of the weapons enhancement.

The problem with the government's position is that it would leave Mr. Torres without the benefit of judicial review. It may be said Mr. Torres could file a 28 U.S.C. § 2241 habeas petition challenging the enhancement once the BOP denies him the sentence reduction. Such a petition, however, must challenge the execution of a sentence, not its legality, Matheny v. Morrison, 307 F.3d 709, 712 (8th Cir. 2002), and Mr. Torres's claim goes to the legality of his sentence, namely, whether the district court properly applied the enhancement under the facts of this case. Thus, if we forgo review, the district court's decision would likely also escape review on collateral attack, as the court reviewing his habeas petition would have to conclude he needed to challenge the enhancement on direct appeal. See Swant v. Hemingway, 23 Fed. Appx. 383, 384 (6th Cir. 2001) (unpublished opinion) (reaching this result). Today, we would tell Mr. Torres to save his claim for another day, only to have another panel tell him, when that day comes, he should have brought his claim today.

It would be unfair to put Mr. Torres in such a quandary; we will not cast his ship out to a sea without a shore. A more sensible approach is to review the merits of his claim, especially where it is susceptible to an elegant resolution in favor of the government. Accordingly, we will review his claim.

# III

For purposes of U.S.S.G. § 2D1.1(b)(1), we review for clear error a district court's finding the defendant possessed a dangerous weapon during a drug trafficking offense. United States v. Atkins, 250 F.3d 1203, 1213 (8th Cir. 2001).

A sentencing court should apply the enhancement "if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense." U.S.S.G. § 2D1.1(b)(1) cmt. n.3. The government bears the burden of proving by a preponderance of the evidence that the firearm was present and was probably connected to the drug charge. Atkins, 250 F.3d at 1213. To carry its burden, the government need only prove a temporal and spatial nexus among the weapon, defendant, and drug-trafficking activity. The government need not prove the defendant had actual possession of the weapon; constructive possession will do. Id.

In this case, the evidence easily supports the district court's finding that Mr. Torres possessed a firearm under § 2D1.1(b)(1). It is undisputed Mr. Torres and Mr. Vela were engaged in a conspiracy to sell cocaine during the first controlled purchase on May 31, 2002, and Mr. Vela then had a firearm visible on his hip. Thus, the weapon was present during a conspiratorial act, and the only plausible issue is whether it was connected to the conspiracy or fortuitously present on the scene.

We find no clear error in the district court's finding the weapon was connected to the conspiracy. Far from it. Fearful of betrayal, Mr. Torres took the informant alone to the back utility room where the gun was on display on Mr. Vela's hip. The undercover agent also observed the gun when Mr. Vela emerged from the kitchen and paced the outer room. Mr. Torres collected an extra $100 from the informant, and Mr. Vela later stated he had received $100 for his role as a back-up in the second controlled purchase. It seems to us not only probable but also obvious that Mr. Vela

provided security for Mr. Torres during the first controlled buy and so the gun was connected to the drug conspiracy of which they were convicted.

IV

Approximately four months after oral argument, the United States Supreme Court released Blakely v. Washington, 124 S. Ct. 2531 (2004), which held "that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 2537; see also Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). We subsequently directed the parties to file supplemental briefs addressing the impact of Blakely on the issues in this case. Mr. Torres responded that under Blakely the district court, in applying § 2D1.1(b)(1), committed plain error by enhancing his sentence beyond the statutory maximum based upon facts not reflected in a jury verdict or admitted to by him. While we agree the district court committed error, the error did not arise simply from enhancing Mr. Torres's sentence based upon facts not reflected in a jury verdict or admitted to by him, but by doing so in the now defunct mandatory guideline regime. United States v. Pirani, 406 F.3d 543, 551, 553 (8th Cir. 2005).

A correct classification of the nature of the error becomes particularly important when analyzing the substantial rights portion of plain error review. United States v. Olano, 507 U.S. 725, 732-36 (1993) (explaining plain error review). A defendant is not entitled to relief from plain error unless the error affects his substantial rights, meaning he was prejudiced by it. Id. at 734. In determining whether the error prejudiced Mr. Torres to the degree sufficient to warrant resentencing, we must take into consideration the regime under which he will be resentenced is no longer mandatory but effectively advisory. United States v. Booker,

125 S. Ct. 738, 757 (2005) (remedying the constitutional infirmities inherent in the federal sentencing guidelines by making them effectively advisory). Thus, a defendant seeking to show he was prejudiced by a mandatory application of the sentencing guidelines must demonstrate by a "reasonable probability" he would have received a more favorable sentence under an advisory guideline regime. Pirani, 406 F.3d at 552-53 (applying the substantial rights prong of plain error review). Mr. Torres, who was sentenced to the statutory mandatory minimum, cannot so demonstrate because he has already received the most favorable sentence to which he is entitled by law. See United States v. Vieth, 397 F.3d 615, 620 (8th Cir. 2005) (rejecting the notion the defendant was entitled to resentencing under Booker because the sentence was not determined based upon an application of the federal sentencing guidelines, but rather based upon a mandatory minimum sentence).

V

The government presented more than sufficient evidence to show the gun was connected to the drug conspiracy and the district court did not err in finding Mr. Torres constructively possessed the gun during a drug trafficking offense. Thus, the district court properly applied the § 2D1.1(b)(1) enhancement, and Mr. Torres failed to demonstrate that any error resulting from this application affected his substantial rights. Accordingly, we affirm.

_____