# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2189

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Marcelino Barragan Lopez, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: December 17, 2004
Filed: August 1, 2005

_____

Before BYE, JOHN R. GIBSON, and GRUENDER, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Marcelino Barragan Lopez appeals from the sentence imposed on him following his conviction on plea of guilty to one count of possession of methamphetamine with intent to distribute it. Lopez was sentenced to a term of 135 months' imprisonment and five years of supervised release. The issue on appeal is whether the district court[1] erred in assessing a two-level enhancement for possession of a firearm during the commission of the offense. We affirm the sentence imposed.

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

At the time of the offense, Lopez was staying as a guest at the home of his cousin and co-defendant Mauricio Barragan Hueso, at 221 Third Avenue Northwest in St. Cloud, Minnesota. Lopez arrived at Hueso's house from Washington, driving a black car, about three weeks before his arrest on July 31, 2003. Another man had also come to Hueso's house from Washington, and he drove a white Ford Thunderbird. The other man left the white Thunderbird in the garage at Hueso's house. Lopez admitted that methamphetamine was left in the Thunderbird in Lopez's possession and control and that he intended to distribute it.

On July 29, 2003, two days before Lopez's arrest, Hueso took pictures of Lopez and another co-defendant, Jesus Arellano, seated at a table. The pictures showed Lopez and Arellano posing with handguns next to the table, which held bottles of expensive tequila. Lopez held a pistol in his right hand, and in his left hand he held a gun magazine, containing a bullet.

On July 31, 2003 police executed a search warrant at Hueso's house. They found 2.7 kilograms of methamphetamine in the Thunderbird in the garage, as well as 132 grams on top of a china cabinet and two and a quarter pounds in a diaper bag in a hall. Police also found one handgun in the china cabinet and two more in a bedroom. All three guns were loaded. Additionally, police retrieved $5,700 in cash, including $3,400 in the china cabinet; a triple beam scale; a Bushnell night vision scope; and documents with drug notes and telephone numbers. They also seized the photographs described above.

Lopez pleaded guilty to possession of methamphetamine with intent to distribute it. In his plea agreement, Lopez and the government stated that they did not agree about whether the gun enhancement under United States Sentencing Guidelines 2D1.1(b)(1) should apply, or therefore, whether Lopez was entitled to safety-valve relief from the mandatory minimum sentence. See U.S.S.G. § 2D1.1(b)(7).

-2-

The district court held a sentencing hearing to resolve the dispute. At the hearing, Hueso testified that he bought the guns from his cousin Alejandro, who needed to get rid of them before returning to Mexico, where it would be illegal to possess such guns. Hueso said that two days before he was arrested, he and Lopez and Arrellano were drinking and using drugs and decided to take the pictures. He said that he took the guns out of a safe box in his car where he ordinarily kept them and that he got them out solely to use as props in the pictures.

A deputy sheriff involved in the execution of the search warrant introduced diagrams showing the layout of the house and the locations of the various items seized. He said it appeared that someone had been using the living room as a bedroom for an extended stay, judging from the personal effects left there. The china cabinet containing methamphetamine, a loaded gun, and $3,400 in cash was just around the corner from the living room.

The district court discounted Hueso's story that he ordinarily kept the guns inaccessible in a locked trunk, but that he had brought them out temporarily just to be used for the pictures. The court said the story was "belied by the fact that they weren't in a locked cabinet . . . two days after the pictures were taken at the time the search warrant was executed." The court held that the gun enhancement applied to Lopez because it was not clearly improbable that the weapons were connected to the offense.

Even though the Sentencing Guidelines are now advisory rather than mandatory, see United States v. Booker, 125 S. Ct. 738, 756-57 (2005), the district court must determine the guidelines range before considering other relevant factors. United States v. Mathijssen, 406 F.3d 496, 498 (8th Cir. 2005). We review the district court's application of the Sentencing Guidelines de novo and its factual findings at sentencing for clear error. Id. In particular, we review for clear error the district court's finding that the defendant possessed a dangerous weapon during a

drug-trafficking offense. United States v. Torres, 409 F.3d 1000, 1003 (8th Cir. 2005). Because Lopez only argues that the district court erred in assessing the two-level enhancement under U.S.S.G. § 2D1.1(b)(1), we need not consider whether the sentence is unreasonable in light of all the factors listed in 18 U.S.C. § 3553(a). See Mathijssen, 406 F.3d at 498.

U.S.S.G. § 2D1.1(b)(1) states that the two-level enhancement applies if "a dangerous weapon (including a firearm) was possessed"–meaning possessed during the offense. See Torres, 409 F.3d at 1003 (reviewing district court's finding that "defendant possessed a dangerous weapon during a drug trafficking offense"). Lopez was caught on film in actual possession of a gun and loaded magazine, shortly before the drugs were seized from the garage, so there is no substantial question that Lopez possessed a gun during the offense.

The real dispute is whether the guns were connected to the offense. The commentary clarifies that mere possession of a weapon is not enough, but that there must be a connection with the offense: "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." § 2D1.1, cmt. n.3. We have paraphrased the commentary's term "not clearly improbable" as "probable," see Torres, 409 F.3d at 1003, and we have held that the government has the burden of proving by a preponderance of the evidence that the weapon's presence was probably connected to the offense. Id. To discharge this burden, "the government need only prove a temporal and spatial nexus among the weapon, defendant, and drug-trafficking activity." Id. The government need not prove that the defendant owned either the weapon or the premises where the weapon was found. United States v. Atkins, 250 F.3d 1203, 1213-14 (8th Cir. 2001).

There is certainly some temporal and spatial nexus among Lopez, the guns and the drug-trafficking. The guns were seized at the house where Lopez was living at the same time that his drugs were seized from the garage. Two days before the

contraband was found, Lopez had his picture taken holding one of the guns and a loaded magazine. Lopez, the guest in the house, was staying in the living room, and the china cabinet with a gun in it was just around the corner from his quarters. See United States v. Ingles, 408 F.3d 405, 409 (8th Cir. 2005) (connection with crime established where defendant arrested while engaged in offense with weapon "within arms reach" even though government stipulated in plea agreement that the firearm was not connected to the offense); United States v. Betz, 82 F.3d 205, 211 & n.4 (8th Cir. 1996) (collecting cases); United States v. Hiveley, 61 F.3d 1358, 1362-63 (8th Cir. 1995) (sufficient connection shown where search of ranch revealed drugs in shed and guns in house-trailer).

Additionally, the likelihood of connection between the guns and the drug offense is increased by the fact that the guns were pistols, a type of gun that has been recognized as particularly likely to be used in the drug trade, see United States v. Drozdowski, 313 F.3d 819, 823 (3d Cir. 2002), and the guns were all loaded, which suggests they were being kept ready for immediate or emergency use, see Betz, 82 F.3d at 211. Cf. § 2D1.1, cmt. 3 (clear improbability of connection to offense if defendant kept unloaded hunting rifle in closet).

Finally, no facts take away from the inference created by the proximity of the guns, the defendant, and the drug activity. The district court did not accept the argument that the guns were ordinarily kept inaccessible and were only brought out to use as props for a picture. The district court stated that this story was inconsistent with the fact that the guns were still out two days after the photo-shoot. The court's credibility assessment was not clearly erroneous.

In the last sentence of his reply brief, Lopez states for the first time that the case presents an issue under Blakely v. Washington, 124 S. Ct. 2531 (2004), concerning the constitutionality of applying a sentencing enhancement based on facts neither found by a jury nor admitted by Lopez. Lopez did not object in the district

court on the basis of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), or the constitutionality of the Sentencing Guidelines,[2] so our review is for plain error. In order to conclude that the district court's use of the guidelines as mandatory in sentencing constituted plain error, we would have to determine that there is a reasonable probability that Lopez would have received a more favorable sentence but for the error. <u>United States v. Pirani</u>, 406 F.3d 543, 552 (8th Cir. 2005) (en banc). The sentencing transcript gives no reason to believe that the district judge would have imposed a different sentence had she known that the guidelines were advisory rather than mandatory.

We affirm the sentence imposed.

_____

---

[2]Lopez could not have relied on <u>Blakely</u> or <u>United States v. Booker</u>, 125 S. Ct. 738 (2005) in the district court, since neither had been decided yet.