# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2928

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   District of Nebraska. |
| Jose Delapaz, | * |
| | *       [UNPUBLISHED] |
| Defendant-Appellant. | * |

_____

Submitted: February 16, 2006
Filed: February 22, 2006

_____

Before LOKEN, Chief Judge, LAY and SMITH, Circuit Judges.

_____

PER CURIAM.

Jose Delapaz appeals the district court's[1] assessment of a two-level sentencing enhancement for possession of a dangerous weapon in connection with drug trafficking. He argues the court clearly erred in finding the evidence sufficient to justify the enhancement. We affirm.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

## I. Background

In March 2005, Jose Delapaz pleaded guilty to conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), 846 and 18 U.S.C. § 2. The plea agreement reserved the rights of the parties to present evidence at the time of sentencing regarding whether a two-level enhancement should be applied for possession of a firearm in connection with the conspiracy charge pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(b)(1).

In June 2005, an evidentiary hearing was held at which the government presented testimony from two witnesses. The government's first witness, Piper Niedt, testified pursuant to a non-prosecution agreement. She stated that she knew Delapaz through her boyfriend, Andrew Requejo, who had obtained methamphetamine from Delapaz and Jose Delira, one of Delapaz's codefendants in this case. Niedt testified that on occasion she went with Requejo when he bought methamphetamine from Delapaz and Delira. Although Niedt stated she never saw any actual drug transactions, Requejo would sometimes be in possession of methamphetamine after meeting with Delapaz and Delira. Niedt testified that, in April 2004, she went with Requejo to an apartment building parking lot because he wanted to buy methamphetamine. She stated she waited in the car while Requejo talked with Delapaz and Delira in the parking lot. At some point, Delira got into the car in which Niedt was sitting. She testified he was holding a handgun she thought looked like a .357. According to Niedt, Delira placed the gun on the floorboard of the backseat for a short time before getting out of the car with the gun and joining Delapaz and Requejo, who were still talking in the parking lot. When Requejo returned to the car, he told Niedt that he was not able to buy methamphetamine because he had no money. Niedt also testified that Requejo had once owned a gun similar to the gun Delira had

brought into the car. She stated she believed, based on overhearing a telephone conversation between Requejo and Delapaz, that Requejo had given this gun to Delapaz and Delira to pay a debt. Niedt stated she never saw Delapaz with a gun.

The second witness, Andrew Requejo, testified pursuant to a state plea agreement. He stated he obtained methamphetamine from Delapaz from December 2003 to March or April 2004, and that he first saw Delapaz with a gun in March or April 2004 when they met in the parking lot outside Delapaz's apartment building. Requejo stated that Niedt accompanied him to this meeting. Requejo testified that this meeting took place in a car parked next to the car in which Niedt was sitting and, while they were discussing the possibility of a drug transaction, Delapaz showed him a .357 handgun. Requejo stated he did not buy methamphetamine from Delapaz because none was available. According to Requejo, Delira never got into the car with Niedt. The second time Requejo saw Delapaz with a gun occurred sometime after the meeting in the parking lot. He went to pick up methamphetamine from Delapaz's apartment and saw Delapaz retrieve a .357 handgun from under a mattress–the same place from which he had retrieved methamphetamine. Requejo asked why Delapaz had the gun, and Delapaz replied that he had it because he owed money to "Pancho," a local drug dealer, and needed the gun for protection. The third time Requejo saw Delapaz with a gun was at Pancho's house, where he and Delapaz happened to be buying drugs at the same time. Requejo stated he heard Delapaz and Pancho discussing Delapaz's debt to Pancho, and that he (Requejo) then observed Delapaz give Pancho the gun. Pancho said he would take $400 off Delapaz's debt. Requejo believed Delapaz owed Pancho money for drugs. Requejo also testified that he had not seen Delapaz with a gun on any other occasion. During cross-examination, Requejo acknowledged that he may have told law enforcement officials that he had seen Delapaz with a gun on only one occasion.

The district court found the greater weight of the evidence demonstrated Delapaz possessed a gun in connection with a drug trafficking crime, noting that

evidence had been presented corroborating three such occasions: first, during the attempted drug deal in the parking lot to which both Niedt and Requejo testified; second, when Delapaz displayed the gun to Requejo and said he used it for protection against another drug dealer; and third, when Delapaz used a gun as barter to settle a drug-related debt. The court acknowledged that Requejo's testimony conflicted with Niedt's regarding whether Delira got into the car in which Niedt was sitting during the attempted drug deal in the parking lot. However, the court stated, "[the discrepancy], in my opinion, is not sufficient to cause me to disbelieve the testimony of either witness. It seems to me that—that one could—both of those things could have happened and—and one could well have misremembered what happened without them being untrue."

## II. Analysis

We review a district court's factual findings regarding the application of a sentencing enhancement for possession of a dangerous weapon during a drug offense for clear error. *United States v. Lopez*, 416 F.3d 713, 715 (8th Cir. 2005). A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Cabbell,* 35 F.3d 1255, 1260 (8th Cir. 1994).

A sentencing court should apply the enhancement "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1) cmt. n.3. We recently summarized the government's burden of proof under § 2D1.1(b)(1):

> The government bears the burden of proving by a preponderance of the evidence that the firearm was present and was probably connected to the drug charge. To carry its burden, the government need only prove a temporal and spatial nexus among the weapon, defendant, and drug-

trafficking activity. The government need not prove the defendant had actual possession of the weapon; constructive possession will do.

*United States v. Torres*, 409 F.3d 1000, 1003 (8th Cir. 2005) (citation omitted).

In support of his argument that the district court clearly erred, Delapaz points out that Niedt's and Requejo's testimony was offered pursuant to agreements with the government. He argues the government did not meet its burden of proof because the witnesses' testimony was inconsistent and incomplete, noting that the testimony of Niedt and Requejo conflicted regarding whether Delira got into the car with Niedt. Next, he argues Requejo's testimony was "clearly questionable" because "[t]he incidences to which he testified were never revealed to law enforcement despite the admonition that he be truthful and complete during his proffers with the government." Delapaz further observes that Requejo's allegations that Delapaz pulled a gun from a mattress and used a gun to pay down a drug debt were not corroborated by any other witnesses.

After carefully reviewing the record, we conclude the district court's finding that Delapaz possessed a gun in connection with drug trafficking is not clearly erroneous. There is no question that the three incidents detailing Delapaz's gun possession related by Requejo satisfy U.S.S.G. § 2D1.1(b)(1). Each time, Delapaz's gun possession was spatially and temporally connected to drug trafficking activity. *See Torres*, 409 F.3d at 1003. During the incident in the parking lot, Requejo and Niedt both testified Requejo met with Delapaz for the express purpose of buying drugs. When Requejo went to buy methamphetamine from Delapaz at his apartment, Delapaz pulled a .357 from the same place he had retrieved methamphetamine— under a mattress—then told Requejo he had the gun for protection because he owed money to "Pancho," another drug dealer. Finally, Requejo saw Delapaz give the gun to "Pancho" in exchange for $400 of drug debt. Each of these incidents establish that Delapaz possessed a gun in connection with drug trafficking activities.

Regarding the inconsistencies between the testimony of Niedt and Requejo regarding what transpired during the April 2004 parking lot incident, we decline to disturb the district court's conclusion that the inconsistencies did not undermine the believability of the witnesses' testimony. "We are particularly hesitant to find clear error in the district court's findings of fact where those findings are based on determinations of witness credibility." *United States v. Causor-Serrato*, 234 F.3d 384, 390 (8th Cir. 2000). The district court is best able to assess the value of testimony, and the court's determination regarding whether Requejo and Niedt were credible was within its fact-finding purview. *See id.* "The law is well-settled that a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal." *Id.*; *see also United States v. Hyatt*, 207 F.3d 1036, 1038 (8th Cir. 2000); *United States v. Behler*, 187 F.3d 772, 777 (8th Cir. 1999).

III. Conclusion

For the foregoing reasons, we hold the district court did not clearly err in concluding that sufficient evidence was presented to justify imposing a two-level enhancement for possession of a gun pursuant to U.S.S.G. § 2D1.1(b)(1).

AFFIRMED.

_____