# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3324

_____

United States of America

*Plaintiff - Appellee*

v.

Willie Gonzalez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 11, 2015
Filed: July 2, 2015
[Unpublished]

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

PER CURIAM.

Willie Gonzalez pleaded guilty to conspiring to possess with intent to distribute 500 grams or more of a mixture or substance containing methamphetamine in

violation of 21 U.S.C. § 846, and the district court[1] sentenced him to 144 months' imprisonment—a 24-month upward variance from the 120-month statutory mandatory minimum sentence based on the quantity of methamphetamine involved. Gonzalez appeals his sentence, and we affirm.

Gonzalez was originally indicted on one count of possession with intent to distribute methamphetamine and was taken into custody. Prior to trial, he was released from custody subject to several special conditions, including that he remain in Nebraska and that he refrain from possessing or using drugs or alcohol. Within weeks, however, a pretrial services officer filed a petition in the district court seeking a warrant for Gonzalez's arrest. The petition alleged that Gonzalez had violated the terms of his pretrial release by testing positive for methamphetamine on two occasions and by failing to appear for mandatory substance-abuse treatment. A warrant was issued, and two days later, Gonzalez was arrested in Iowa in possession of 15 grams of pure methamphetamine. Gonzalez admitted to violating the conditions of his pretrial release, and his release was revoked.

Gonzalez was later charged in a superseding indictment with the original count of possession with intent to distribute methamphetamine and an additional count of conspiracy to distribute methamphetamine. Gonzalez pleaded guilty to the conspiracy count without the benefit of a plea agreement, and a presentence investigation report (PSR) was ordered. As relevant here, the PSR recommended a two-level increase to Gonzalez's base offense level under § 2D1.1(b)(1) of the United States Sentencing Guidelines Manual (U.S.S.G. or Guidelines) for possession of a firearm in connection with the conspiracy. Gonzalez objected to this recommendation.

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

At the sentencing hearing, the government presented testimony to support application of the firearm enhancement. Two cooperating witnesses testified that methamphetamine trafficking had occurred at a tavern owned by Gonzalez and that Gonzalez was involved in the trafficking. An Omaha police detective testified that after receiving a tip about drug trafficking at the tavern, officers obtained warrants to search the tavern and Gonzalez's residence. When the detective and other officers executed the warrant at the tavern, Gonzalez and one other individual were present, and Gonzalez was standing near the bar. Officers searched Gonzalez and found a small amount of methamphetamine on his person, as well as a small amount of methamphetamine and a digital scale elsewhere in the tavern. Officers recovered a firearm from a trash can located near the bar where Gonzalez had been standing and ammunition matching the firearm from behind the bar. They also recovered ammunition matching the firearm during the search of Gonzalez's residence.

Based on this evidence, the district court concluded that Gonzalez possessed the firearm in connection with the drug-trafficking conspiracy and that the § 2D1.1(b)(1) firearm enhancement applied. Gonzalez's advisory Guidelines sentencing range with the firearm enhancement would have been 87 to 108 months, but because the amount of methamphetamine attributed to Gonzalez triggered a higher 120-month statutory mandatory minimum sentence under § 841(b)(1), the mandatory minimum sentence became the Guidelines range. See U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."). Application of the § 2D1.1(b)(1) firearm enhancement also meant that Gonzalez was ineligible for safety-valve relief from the 120-month statutory mandatory minimum sentence. See id. § 5C1.2(a)(2) (imposing requirement to qualify for relief that "the defendant did not . . . possess a firearm or other dangerous weapon . . . in connection with the offense"). After considering the 18 U.S.C. § 3553(a) factors and taking into account Gonzalez's serious criminal conduct while on pretrial release, the district court concluded that a 24-month upward variance from the 120-month mandatory minimum

was appropriate and, as noted above, imposed a sentence of 144 months' imprisonment.

Although it does not develop the issue, Gonzalez's brief appears to argue that the district court erred by finding that the firearm was connected to the conspiracy and by applying § 2D1.1(b)(1). We review for clear error a district court's factual finding that a defendant possessed a firearm for purposes of a § 2D1.1(b)(1) firearm enhancement. See United States v. Atkins, 250 F.3d 1203, 1213 (8th Cir. 2001). The enhancement applies "if the [firearm] was present, unless it is clearly improbable that the [firearm] was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.11. In other words, the government must establish "that the firearm was present and was probably connected to the drug charge." United States v. Torres, 409 F.3d 1000, 1003 (8th Cir. 2005). Proof of "a temporal and spatial nexus" among the firearm, the defendant, and the drug-trafficking activity is sufficient. Id.

Based upon the earlier-described testimony presented at the sentencing hearing, we conclude that the district court did not clearly err in finding that Gonzalez possessed the firearm in connection with the conspiracy to distribute methamphetamine and that the court properly applied the § 2D1.1(b)(1) firearm enhancement.[2]

---

[2]Gonzalez's Guidelines sentencing range was 87 to 100 months with the firearm enhancement and 70 to 87 months without the enhancement. In either event, because the 120-month statutory mandatory minimum was greater, the 120-month mandatory minimum became the advisory Guidelines sentence. The question whether the firearm enhancement applied remains relevant, however, because it renders Gonzalez ineligible for § 5C1.2(a) relief from the 120-month mandatory minimum sentence. See United States v. Muniz Ochoa, 643 F.3d 1153, 1157-58 (8th Cir. 2011) (concluding that because evidence was sufficient to support application of the § 2D1.1(b)(1) firearm enhancement, safety-valve relief under § 5C1.2(a) was unavailable).

Gonzalez next argues that his sentence is substantively unreasonable. We review a defendant's sentence—whether it is inside or outside the Guidelines range—under a "deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41 (2007). "A district court abuses its discretion 'when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors.'" United States v. Strong, 773 F.3d 920, 926 (8th Cir. 2014) (quoting United States v. Robison, 759 F.3d 947, 950-51 (8th Cir. 2014)), cert. denied, 135 S. Ct. 1872 (2015). In calculating an appropriate sentence, a district court has "substantial latitude" to weigh the § 3553(a) sentencing factors, United States v. Ruelas-Mendez, 556 F.3d 655, 657 (8th Cir. 2009), and "it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable," United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (quoting United States v. Gardellini, 545 F.3d 1089, 1090 (D.C. Cir. 2008)).

After considering the § 3553(a) factors, the court determined that a 24-month upward variance was appropriate in light of Gonzalez's conduct while on pretrial release. As noted above, after he was originally indicted, Gonzalez repeatedly violated the terms of his pretrial release by possessing and using methamphetamine, by failing to appear for substance-abuse treatment, and by leaving the state of Nebraska. When Gonzalez was eventually arrested in Iowa, he was in possession of 15 grams of pure methamphetamine. Given the fact that Gonzalez's pretrial-release violations, like the offenses charged in the indictment, involved methamphetamine, the district court could properly conclude that Gonzalez posed a substantial risk of recidivism and that an upward variance was warranted. The district court did not abuse its substantial discretion in weighing the § 3553(a) factors, and the resulting sentence is not substantively unreasonable.

The judgment is affirmed.

_____