# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1733

_____

United States of America,         *
                                  *

        Appellee,          *

                                  *   Appeal from the United States

     v.                   *   District Court for the

                                  *   Southern District of Iowa.

Aaron William Anderson, Jr.,    *

                                  *

        Appellant.       *

_____

Submitted: January 13, 2010
Filed: August 26, 2010

_____

Before SMITH and COLLOTON, Circuit Judges, and KORNMANN,[1] District Judge.

_____

SMITH, Circuit Judge.

Aaron Anderson was found guilty of possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). At sentencing the district court[2] imposed a two-level enhancement for possession of a dangerous weapon after a gun was found in a storage shed connected to Anderson. With this added enhancement, the district court sentenced Anderson to 360 months' imprisonment.

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

Anderson now appeals, arguing that the district court erred by applying the two-level gun enhancement and that the resulting sentence is unreasonable. For the reasons stated, we affirm.

## I. *Background*

Law enforcement officers received information that Anderson was dealing drugs out of his residence in Davenport, Iowa. Officers searched Anderson's residence pursuant to a search warrant. Inside, officers encountered four people, including Anderson. Officers found 39.54 grams of crack cocaine in a Pyrex cup in a kitchen cupboard, 1.58 grams of crack on the stove, and .14 grams of crack on the kitchen counter. Officers also seized a set of keys on a key chain from the living room.

Anderson was arrested and transported to the police station. After being read his *Miranda* rights, Anderson admitted possession of the crack cocaine and some marijuana found in his residence but claimed that the drugs were only for personal use. Anderson stated that the other three suspects present were just hanging out and did not know about the crack cocaine in the kitchen. Later, during a break in the interrogation, Anderson discovered the door to the interview room was unlocked and escaped police custody by merely walking out of the police station.

Police obtained a search warrant for a storage unit rented under the name of Shanetta Roberts, Anderson's girlfriend. Inside this storage unit police found a locked safe, and inside the safe officers found a 9mm handgun, two loaded clips, and a box of ammunition. The keys previously seized from Anderson's residence opened both the padlock on the door of the storage unit and the lock on the safe inside the unit.

Anderson was arrested again after further investigation led officers to a Davenport residence. Prior to his arrest, Anderson arrived at the residence in a vehicle with Roberts. This time Anderson claimed that the crack cocaine found in his kitchen during his first arrest belonged to the other three people at his residence. Anderson

testified that after his first arrest he lied to police about the source of the drugs. When asked about the handgun found in the storage unit, Anderson admitted his fingerprints would be on the weapon because he put it in the storage unit. Anderson claimed that he was holding it for a cousin from Chicago after his cousin's sister asked Anderson to store it for safekeeping.

At trial cooperating defendants Mark Woodson and Andrew Sullivan both described to police buying and cooking crack cocaine with Anderson several times. Although Anderson had previously admitted to knowing Sullivan, during trial Anderson denied any drug dealings with Sullivan. Anderson testified that after his second arrest he again lied when he told police he that dealt drugs with both Sullivan and Woodson. Although he admitted constructive possession of the crack cocaine, Anderson denied any intent to distribute it. The jury convicted Anderson of possession of crack cocaine with intent to distribute.

Before sentencing, the district court examined a presentence investigation report (PSR) describing Anderson's family background and personal characteristics. Anderson was convicted of aggravated possession of a stolen vehicle at age 17. He violated his initial sentence of probation at least two times resulting in prison sentences of 90 days and six months. Anderson has six prior convictions for possession of marijuana, including one felony drug conviction for possession with intent to deliver marijuana. Anderson was on probation at the time of the charged offense. Under the Guidelines, Anderson's convictions placed him in criminal history category VI.

According to the PSR, Anderson's parents had past problems with marijuana, crack cocaine, and cocaine, and in fact introduced him to the substances. Anderson started consuming liquor and beer at age 11 and reportedly first used marijuana at age 12 and crack cocaine at age 22. His parents separated when he was 7 or 8 years old. Anderson dropped out of school in the 11th grade. From November 2005, until his

arrest on February 13, 2008, Anderson had no permanent employment. From 2000 to 2008, Anderson only worked for a temporary employment agency from April 2003 to November 2005.

At the sentencing hearing, Anderson objected to the PSR findings supporting the two-level possession of a dangerous weapon enhancement. The district court found that although the handgun was at a remote location, the key was found with Anderson. The rental unit was in the name of Roberts, Anderson's girlfriend. Anderson also used a cell phone obtained under Roberts's name. Consistent with the findings on drug quantity, the district court also considered that Anderson was involved with a substantial quantity of crack cocaine trafficking. Additionally, the district court considered that Anderson admitted to hiding assets (such as cars) for later use. At trial, Anderson claimed that he held the gun for his cousin and claimed no personal purpose for possessing the weapon. Based on this evidence, the district court found that it was clearly probable that the gun seized out of the storage unit was associated with drug trafficking and applied the two-level enhancement under U.S.S.G. §2D1.1(b)(1).

The district court calculated Anderson's Guidelines offense level to be 38—which included a base-offense level of 34 plus a two-level enhancement for possession of a dangerous weapon and a two-level enhancement for obstruction of justice—and calculated his criminal history to be category VI, yielding a Guidelines range of 360 months to life. Prior to sentencing, Anderson filed a motion for downward departure based on *Spears v. United States*, 129 S. Ct. 840 (2009), which allows the district court to replace the Guidelines then 100-to-1 ratio for crack/powder cocaine with its own ratio if it chooses. The district court acknowledged the filing of this motion and considered the issue as part of Anderson's sentencing argument. The district court discussed this issue with Anderson's counsel and recognized its authority to depart on a policy disagreement with the crack/powder disparity in the Guidelines,

but the district court did not specifically rule on the motion to depart downward. The court ultimately decided not to adopt a different ratio.

During sentencing, the district court noted the seriousness of Anderson's offense based on the substantial drug quantities involved and the ongoing drug activity. The district court took note that this was Anderson's seventh drug conviction. The district court discussed the need to protect the public from further crimes in light of Anderson's lengthy history of drug trafficking and theft-related activity. The court understood the Guidelines to be an "important, but not in any way controlling factor to be considered." The district court said it did consider Anderson's difficult childhood, his substance abuse history, and his lack of education. The district court then sentenced Anderson to 360 months' imprisonment, the bottom of the enhanced Guidelines range.

## II. *Discussion*

On appeal, Anderson requests that we reverse the district court's sentence and remand for resentencing, based on two arguments: (1) the two-level gun enhancement is unwarranted and (2) the sentence is unreasonable.

### A. *Gun Enhancement*

Anderson first argues that the district court misapplied U.S.S.G. § 2D1.1(b)(1) when it concluded that Anderson's constructive possession of a pistol was without a legitimate purpose and was therefore clearly probable that the weapon played a role in his offense. Anderson contends that because the gun was found locked in a safe and not near the seized crack or any drug paraphernalia, it is clearly improbable that the gun played a role in his drug trafficking. The government responds that the evidence supports the district court's finding that the gun had a connection to Anderson's drug trafficking.

We review a district court's application of the Guidelines de novo, and factual findings are reviewed for clear error. *United States v. Pruneda*, 518 F.3d 597, 607 (8th Cir. 2008). "We will not reverse the district court's factual finding that [Anderson] possessed a firearm for purposes of § 2D1.1 unless the district court's finding is clearly erroneous." *United States v. Hayes*, 15 F.3d 125, 127 (8th Cir. 1994). Findings will be reversed only if the entire record definitely and firmly establishes that a mistake has been made. *United States v. Coleman*, 148 F.3d 897, 901 (8th Cir. 1998).

Section 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." Application Note 3 to this Guideline states:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

To prove that the firearm was "possessed," the government need not prove ownership of either the weapon or the premises on which it is found for a § 2D1.1(b)(1) enhancement to apply. *United States v. Payne*, 81 F.3d 759, 762 (8th Cir. 1996); *see also United States v. Weaver*, 906 F.2d 359, 360 (8th Cir. 1990). Also, "[i]t is not necessary that an individual be observed using the weapon, and either actual or constructive possession is sufficient, i.e., the individual must have exercised 'ownership, dominion, or control' either over the firearm or the premises on which it is found." *Payne*, 81 F.3d at 762. We have found constructive possession where police found weapons after a defendant's arrest in a storage facility rented in the name of someone other than the defendant. *United States v. Montanye*, 962 F.2d 1332, 1347–48 (8th Cir. 1992).

Once a district court has found that a gun was possessed during commission of the offense, the court must impose the § 2D1.1(b)(1) enhancement unless it is clearly improbable that the weapon was connected to the offense. *United States v. Peroceski*, 520 F.3d 886, 889 (8th Cir. 2008). In *Peroceski*, we undertook an extensive analysis of the proof required to apply § 2D1.1(b)(1). 520 F.3d at 887–89. At the time, our circuit had competing case lines, one holding that the government must prove that it is at least *probable* that the weapon was connected with the offense.[3] The other line held that the enhancement should be applied unless it is clearly *improbable* that the weapon was connected with the offense.[4] *Peroceski* resolved the split by holding that "[t]he government must simply show that it is not clearly improbable that the weapon was connected to the drug offense." *Id*. at 889. Therefore, the government does not have to show a probable connection to drug activity. *Peroceski* reasoned that reducing the proof required for connection to the offense supports the goals of the enhancement; it discourages drug criminals from bringing weapons anywhere near their drugs. *Id*. at 888–89. Here, the district court applied the no longer authoritative "clearly probable" standard.

For § 2D1.1(b)(1) to apply, the government must prove two things—(1) the gun was possessed and (2) it was not clearly improbable that the weapon was connected to the drug offense. We hold that the government proved that Anderson constructively possessed the gun, a 9mm handgun that was locked in a safe in the storage unit. Anderson admitted that he placed the handgun in the storage unit, thus exercising

[3]*See, e.g.*, *United States v. Khang*, 904 F.2d 1219, 1223–24 (8th Cir. 1990); *United States v. Bost*, 968 F.2d 729, 732 (8th Cir. 1992); *Hayes*, 15 F.3d at 127.

[4]*See, e.g.*, *United States v. Gordon*, 510 F.3d 811, 818 (8th Cir. 2007); *United States v. Delgado-Paz*, 506 F.3d 652, 654 (8th Cir. 2007); *United States v. Gillispie*, 487 F.3d 1158, 1162 (8th Cir. 2007); *United States v. Ault*, 446 F.3d 821, 824 (8th Cir. 2006); *United States v. Morin*, 437 F.3d 777, 781 (8th Cir. 2006); *United States v. Wattree*, 431 F.3d 618, 623 (8th Cir. 2005); *United States v. Ingles*, 408 F.3d 405, 409 (8th Cir. 2005).

sufficient control over the firearm to be considered in constructive possession of it. The keys seized from Anderson during the police search opened both the padlock to the storage unit and the safe inside containing the handgun and loaded clips, showing control and dominion of the storage unit. *See Payne*, 81 F.3d at 762. Anderson, in fact, was the only person with access to the gun. Although the rental unit was in Roberts's name, she told officers that Anderson actually owned the safe. Anderson therefore "possessed" the firearm.

Additionally, while we recognize that it is a close case, we also hold that the government proved that it was not clearly improbable that the handgun was connected to Anderson's ongoing drug activity. We have long held that the firearm must be connected with the criminal activity before its possession can be used to enhance the defendant's sentence. *United States v. Turpin*, 920 F.2d 1377, 1386 (8th Cir. 1990). "The government can prove that the weapon was connected with the offense by showing that a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant." *Payne*, 81 F.3d at 763 (internal quotations and citation omitted); *see also United States v. Torres*, 409 F.3d 1000, 1003 (8th Cir. 2005) ("[T]he government need only prove a temporal and spatial nexus among the weapon, defendant, and drug-trafficking activity."); *United States v. Atkins*, 250 F.3d 1203, 1213 (8th Cir. 2001) ("The government can meet its burden of proof for purposes of a § 2D1.1(b)(1) enhancement by establishing that a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant.) (internal quotations and citation omitted). Regarding the character of this connection, "[t]he government need not show that the defendant used or even touched a weapon to prove a connection between the weapon and the offense." *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000) (per curiam). This means that "[e]vidence that the weapon was found in the same location as drugs or drug paraphernalia usually suffices." *Id*. We have also recognized that a well-known tendency of drug criminals to use firearms in connection with their drug activities supports an inference that a gun at a location near the drug activity was somehow connected to it. *Peroceski*, 520 F.3d

-8-

at 889. However, "[t]he mere presence of a firearm is an insufficient predicate for a § 2D1.1(b)(1) enhancement." *United States v. Savage*, 414 F.3d 964, 966 (8th Cir. 2005).

The government asserts that a temporal and spatial relation existed between the weapon, the drug activity, and Anderson. The district court agreed, explaining in support of this finding that Anderson's crack cocaine trafficking operation was substantial and that Anderson admittedly hid other trafficking assets, which he later used, and that Anderson did not have any legitimate explanation for possession of the handgun.

Trial evidence showed that Anderson trafficked in drugs from at least the spring of 2007 until his arrest in February 2008. The storage unit containing the firearm was rented in Roberts's name in December 2007, and her name was still on the rental agreement when the storage unit was searched on February 15, 2008. The cell phone that Anderson admittedly used to conduct drug transactions in December 2007 was also in Roberts's name. Drug dealers commonly put their property in someone else's name to avoid detection. *United States v. Daniels*, 723 F.2d 31, 32–33 (8th Cir. 1983). Consequently, a temporal connection existed between Anderson's drug activities and placement of the gun in the safe.

The circumstantial evidence adduced at trial also establishes a spatial connection. While the 9mm handgun in question was not recovered near any drugs or drug paraphernalia, the evidence showed that Anderson displayed a *modus operandi* for hiding assets either used in his drug trafficking operation or to assist in his operation. For example, Anderson maintained the account for the cell phone he used in Roberts's name. Anderson also parked two vehicles at different locations to enable flight from law enforcement should the need arise. Anderson's conduct supports a reasonable inference that he might hide a gun he uses in his drug trafficking operation in a location he controlled, though not in his name.

Additionally, we note that the district court did not credit Anderson's explanation for possessing the gun—safekeeping for someone else. Anderson offered no other explanation such as for sporting purposes. It was not unreasonable for the district court to believe that Anderson might have placed the firearm in a place not readily traceable to himself that would also make it sufficiently accessible for his drug operation, if needed.

This Guidelines enhancement creates a very low bar for the government to hurdle. If it is "not clearly improbable" that the firearm was connected to Anderson's drug activity, then the enhancement applies. Handguns are a recognized tool of the drug trafficking trade, Anderson exhibited a pattern of hiding assets to avoid detection, and Anderson had no credible, legitimate explanation for the possession of this firearm—these facts satisfy the government's low burden of proof. Therefore, based on the evidence before the district court, and under a clear error standard of review, we hold that it is not clearly improbable that the firearm was connected to Anderson's drug activity.

## B. *Unreasonable Sentence*

Anderson next argues that his sentence is unreasonable because the district court did not give sufficient attention to Anderson's family background and placed too much weight on Anderson's criminal history.

A district court must consider the Guidelines range and tailor the sentence in light of other statutory concerns, such as the sentencing factors listed in 18 U.S.C. § 3553(a). *United States v. Cawthorn*, 429 F.3d 793, 802 (8th Cir. 2005). On appeal, we will not reverse a sentence absent a showing of abuse of discretion by the district court. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Miner*, 544 F.3d 930, 932 (8th Cir. 2008). In order to determine if there was an abuse of discretion, we consider if there was a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory,

failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. . . ." *Gall*, 552 U.S. at 51. Once we determine that the decision was procedurally sound, then we may consider the substantive reasonableness of the sentence. *Id*. However, the sentences that fall within the Guidelines range are presumptively reasonable on appeal. *Rita v. United States*, 551 U.S. 338, 351 (2007); *Miner*, 544 F.3d at 932.

Section 3553(a) requires that the district court impose a sentence no greater than necessary to account for the nature and seriousness of the offense and the defendant's history and characteristics, as well as to provide just punishment, to protect the public, and to avoid unwanted sentencing disparities. 18 U.S.C. § 3553(a).

> A sentence may be unreasonable if the district court failed to consider a relevant factor that should have received significant weight, gave significant weight to an improper or irrelevant factor, or considered only appropriate factors but nevertheless committed a clear error of judgment by imposing a sentence that lies outside of the range dictated by the facts of the case.

*United States v. Walker*, 439 F.3d 890, 892 (8th Cir. 2006).

Although a district court is required to consider each of the § 3553(a) factors in determining the proper sentence to impose, it need not "categorically rehearse each of the [§] 3553(a) factors on the record when it imposes a sentence as long as it is clear that they were considered." *United States v. Dieken*, 432 F.3d 906, 909 (8th Cir. 2006).

"We examine the substantive reasonableness of the sentence by considering the totality of the circumstances, including the extent of any variance from the Guidelines range, and the strength of the stated justification . . . ." *United States v. Toothman*, 543 F.3d 967, 970 (8th Cir. 2008) (internal quotations and internal citations omitted).

Anderson argues that the district court assigned either too much or too little weight to certain factors relevant to Anderson's sentencing."The district court has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." *United States v. Bridges,* 569 F.3d 374, 379 (8th Cir. 2009). The district court may give some factors less weight than a defendant prefers or more to other factors but that alone does not justify reversal. *Id.*

A review of the sentencing transcript shows that the district court considered Anderson's childhood, his substance abuse history, and his lack of education. The sentencing judge is in the best position to find facts and "judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Gall*, 552 U.S. at 51 (internal quotations and citation omitted).

Anderson contends that our decision in *United States v. Feemster* is "proof" that his sentence is unreasonable. In *Feemster*, the defendant (Feemster) was convicted of selling crack and had an advisory sentence of 360 months to life. 572 F.3d 455, 458–59 (8th Cir. 2009) (en banc). The district court made a downward departure and sentenced Feemster to the statutory minimum of 120 months' imprisonment. *Id.* at 459. Anderson argues that he, too, should receive the statutory minimum like Feemster. *Feemster* is distinguishable. Anderson's base-offense level for quantity of crack, without enhancements, was 34; Feemster's was 26. *Id.* at 458. The judge enhanced to 360 months Feemster's sentence taking into consideration his juvenile criminal record. *Id.* at 459. The district court chose to depart downward on a belief that Feemster's juvenile record should not count against him so heavily. *Id.* In contrast, Anderson's sentence was largely based on drug quantity, and therefore comparisons to *Feemster* are misplaced.

Anderson also argues that, based on policy reasons, the district court should exercise the discretion recognized in *Spears*. *Spears* holds "that district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." 129 S. Ct. at 843–44. The district court must at least recognize that it has the authority to vary downward based on the disparity. *Moore v. United States*, 129 S. Ct. 4, 5 (2008) (per curiam) (reversing decision based on finding that the district court did not recognize authority to vary downward based on crack/powder disparity in the Guidelines). In *Kimbrough v. United States*, the Supreme Court held that a district court may consider as a sentencing factor the disparity created by the 100-to-1 crack/powder disparity ratio in the Guidelines. 552 U.S. 85, 108–09 (2007). Post-*Kimbrough*, this circuit has not *required* district courts to consider the crack/powder sentencing disparity. *United States v. Saddler*, 538 F.3d 879, 891 (8th Cir. 2008) (finding no plain error based on prior precedent of finding no abuse of discretion for failure to consider crack/powder disparity). Although *Kimbrough* empowers a district court to consider the crack/powder disparity, it does not require it to do so. *United States v. Johnson*, 517 F.3d 1020, 1024 (8th Cir. 2008).

The district court stated its consideration of *Spears* when it explained the sentence: "The Court has considered the disparity between crack cocaine and powder cocaine in the Sentencing Guidelines." The district court, therefore, was aware of its discretion to consider a variance based on the crack/powder disparity and did not abuse its discretion in deciding not to exercise such discretion to grant Anderson's requested variance.

We hold that Anderson's sentence is not substantively unreasonable.

-13-

### III. *Conclusion*

We affirm the judgment of the district court to apply a § 2D1.1(b)(1) gun possession enhancement and we also affirm the court's sentence as we do not find it substantively unreasonable.

COLLOTON, Circuit Judge, concurring.

I join the opinion of the court. I add these additional views in light of the concerns expressed by the separate opinion of my colleague that follows – namely, that the state of the law effectively "shifts the burden of proof" under USSG § 2D1.1(b)(1) to the defendant in a manner that "should not be permitted under our system of justice," *post*, at 18, and that on the facts of this case, "the tail wags the dog, to the detriment of the defendant." *Post*, at 17.

The law of this circuit on § 2D1.1(b)(1) is clear that the burden to prove the adjustment rests with the government. In *United States v. Peroceski*, 520 F.3d 886 (8th Cir. 2008), we disagreed with the view of all other circuits to have considered the matter that the language of "clear improbability" in application note 3 to § 2D1.1 shifts the burden of proof to the defendant to disprove a connection between the weapon and the offense. *Id*. at 889. Instead, we held that "[t]he burden is always on the government to prove that a defendant is subject to a sentencing enhancement," and that under § 2D1.1(b)(1), the government must "show that it is not clearly improbable that the weapon was connected to the drug offense." *Id*.

Even those circuits holding that the "clear improbability" standard shifts the burden of proof to the defendant uniformly have rejected claims that the scheme violates the Due Process Clause. These courts reason that because the guideline itself requires only proof that the weapon was *possessed* during commission of the offense to justify the enhancement, *see* § 2D1.1(b)(1), "[t]he [c]ommentary . . . creates an *exception* to the terms of the [g]uideline, not a presumption that a connection existed"

-14-

between the weapon and the offense. *United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir. 1989) (emphasis added). On this view, there is no constitutional flaw in the guideline, because "[t]he Due Process Clause does not require that the government prove the absence of every possible exception or mitigating circumstance." *Id.* (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986); *Patterson v. New York*, 432 U.S. 197, 210-11 (1977)); *accord United States v. Rhodes*, 322 F. App'x 336, 344 n.3 (4th Cir. 2009); *United States v. Bjorkman*, 270 F.3d 482, 493 (7th Cir. 2001); *United States v. Roberts*, 980 F.2d 645, 648-49 n.3 (10th Cir. 1992); *United States v. McGhee*, 882 F.2d 1095, 1097-99 (6th Cir. 1989). Most of these cases, moreover, rejected a constitutional challenge to § 2D1.1(b)(1) even when the guidelines were mandatory. Under the present advisory system, of course, a district court may incorporate its own policy views, including disagreement with the guidelines, in fashioning a sentence under 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 552 U.S. 85, 101-02 (2007).

Most significant for present purposes, the record in this case does not support the suggestion that the guideline and commentary resulted in a tail-wags-dog scenario that victimized Aaron Anderson. The district court, perhaps due to a conflicting line of authority in this circuit that required the government to show a probable connection between weapon and offense, *see Peroceski*, 520 F.3d at 887, found by a "preponderance of the evidence" that "it was *clearly probable* that the gun *was associated* with [Anderson's] drug trafficking." S. Tr. 11, 13 (emphasis added). This finding was well supported by the evidence.

As the opinion of the court recounts, Anderson was a substantial crack cocaine dealer, operating from his residence in Davenport, Iowa. He placed a nine millimeter handgun, two loaded clips, and a box of ammunition – recognized tools of the drug trade – in a nearby storage unit for which he possessed the keys. He rented the storage unit (like his cell phone) in the name of his girlfriend, consistent with the practice of drug traffickers who hide assets in an effort to avoid detection. When questioned by

-15-

police, after falsely denying responsibility for crack cocaine found in his kitchen, Anderson claimed that he was holding the gun in the Davenport storage unit for an incarcerated cousin from Chicago, at the request of the cousin's sister. Anderson displayed a *modus operandi* of placing assets in strategic locations in Davenport to facilitate his criminal activity. At one point, he parked two vehicles at different locations to enable flight in case of an unexpected encounter with law enforcement.

Faced with this circumstantial evidence, the district court drew the reasonable inference that Anderson possessed the handgun in connection with his drug trafficking activity, finding it "obvious" that "there was no legitimate explanation for a gun." The district court quite reasonably disbelieved Anderson's story that he was merely holding the gun, with loaded clips and a box of ammunition, for a jailed relative who formerly lived 175 miles away. Anderson claimed no other legitimate purpose for the gun; this was not an unloaded hunting rifle found in the closet. *Cf.* USSG § 2D1.1, comment. (n.3). The more likely scenario is that Anderson possessed the firearm and ammunition in an accessible location for use in his drug business as necessary, but kept it in a remote storage unit rented in his girlfriend's name so as to avoid responsibility for the gun if he was apprehended for drug trafficking. That the district court's decision foiled that strategy is no injustice.

KORNMANN, District Judge, concurring.

I concur in the result only because of the case law in our circuit and based upon a "clear error" standard of review. The fact that I would not have made the same finding that the district court made as to the weapon enhancement is of no moment. I concur certainly with the recognition in the majority opinion that this case as to the weapon enhancement is a "close case."

My concern is obviously with the weapons enhancement under U.S.S.G. § 2D1.1(b)(1). There was no evidence that the defendant or anyone else such as an

associate, relative, or co-conspirator was ever seen with any firearm, much less in the presence of illegal substances. There was no evidence that the firearm itself or any other weapon was ever in the same location as illegal substances. Here, the tail wags the dog, to the detriment of the defendant. The Sentencing Commission should immediately revise in a logical fashion Application Note 3 to the guideline in question. If necessary, the United States Supreme Court should examine the state of the law as to these issues.

We are told to apply the enhancement "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." What does it mean to "be present"? Apparently, it is sufficient if the weapon is present somewhere or perhaps anywhere. The majority opinion recognizes, however, the holding in *United States v. Savage*, 414 F.3d 964, 966 (8th Cir. 2005), that "[t]he mere presence of a firearm is an insufficient predicate for a § 2D1.1(b)(1) enhancement." We know also that "[t]he dangerous weapon enhancement applies if the firearm is present during 'relevant conduct,' as defined by U.S.S.G. § 1B1.3(a)(2), not merely during the offense of conviction." *United States v. Ault*, 446 F.3d 821, 824 (8th Cir. 2006) (quotations omitted). I know of no allegation of relevant conduct in the present case.

In an unpublished opinion, the district court was affirmed based on its finding that there was a "likely connection" between the firearms and the drug activities. *United States v. Thomas*, 2010 WL 2881429, at *1 (8th Cir. July 23, 2010) (unpublished) (per curiam). I submit that a finding of "likely connection" should be the required standard.

The majority opinion explains that, under the state of the law: (1) the government does not have to show a probable connection of the firearm with drug activity, (2) the government need not show that the defendant used or even touched a weapon to prove a connection between the weapon and the offense, (3) it is sufficient if the defendant "might" have hidden a weapon, (4) the required proof to

-17-

support the enhancement creates a very low bar for the government to hurdle, and (5) the government has a "low burden of proof" as to the enhancement.

There is something fundamentally wrong with this state of the law. What ever happened to the common requirement that all the evidence against the defendant at a sentence hearing must meet at least a preponderance of the evidence standard? Should enhancements be levied based upon "might haves" or "could haves" or something similar? I submit not. The government is, under the state of the law, not only permitted to show that it is "not improbable" that the weapon was connected to the drug offense but is cut further slack to simply show that it is "not clearly improbable." A "not clearly improbable" standard, in effect, shifts the burden of proof to the defendant. This should not be permitted under our system of justice.

_____