# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2136

_____

United States of America,

       Appellee,

v.

Thomas Michael Fisher,

       Appellant.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   Northern District of Iowa.
\*
\*    [UNPUBLISHED]
\*

_____

Submitted: October 18, 2010
Filed: May 4, 2011

_____

Before SMITH, COLLOTON, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Thomas Fisher pleaded guilty to one count of manufacturing and attempting to manufacture methamphetamine after having two felony drug convictions, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, and 851. The district court[1] sentenced him to 188 months' imprisonment. On appeal, Fisher argues that the district court erred in applying a two-level sentencing enhancement for possessing a dangerous weapon in connection with a drug offense, pursuant to U.S.S.G. § 2D1.1. For the following reasons, we affirm.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

## I. *Background*

On November 19, 2008, deputies from the Linn County Sheriff's Office stopped Fisher's truck after receiving a report that individuals in that truck had been tampering with an anhydrous ammonia tank in rural Linn County, Iowa. The deputies later determined that Fisher, the driver of the truck, and his passengers had attempted to steal anhydrous ammonia for use in manufacturing methamphetamine. After taking Fisher and the passengers into custody, the deputies searched Fisher's truck and found, among other items, two samurai swords (each one sheathed and measuring between three and four feet in length) in the truck's backseat, along with several items consistent with manufacturing methamphetamine.

On February 10, 2009, officers from the Cedar Rapids Police Department executed a search warrant at Fisher's residence and found an "active methamphetamine laboratory." Fisher admitted to manufacturing and selling methamphetamine. On April 27, 2009, officers from the Cedar Rapids Police Department executed a search warrant at an apartment that Fisher rented and found another "active methamphetamine laboratory"; Fisher was not present during the search.

As a result of these incidents, Fisher pleaded guilty to one count of manufacturing and attempting to manufacture methamphetamine after having two felony drug convictions. The presentence investigation report (PSR) calculated Fisher's base offense level to be 36 based on the drug quantity attributable to him. The PSR further recommended a two-level enhancement, pursuant to U.S.S.G. § 2D1.1(b)(1), for possessing a dangerous weapon—the two samurai swords—in the backseat of his truck during the attempted theft of anhydrous ammonia. In addition, the PSR recommended a three-level downward adjustment for acceptance of responsibility. This adjusted offense level of 35, when combined with a criminal

history category of IV, produced an advisory Guidelines sentencing range of 235 to 293 months.

At sentencing, Fisher agreed to the PSR's base offense level of 36 but objected to the two-level dangerous weapon enhancement. He did not dispute that he possessed the swords, but he asserted that he acquired them shortly before November 19, 2008, only as a part of his knife collection.[2] Thus, he argued that the government had not met its burden to show that it was not "clearly improbable that the weapon was connected to the offense." The district court overruled his objection to the enhancement, stating:

> The Court makes the finding that it is not clearly improbable that the defendant's samurai sword possession was connected with his manufacturing and attempted manufacture of methamphetamine. It's very unusual to drive around with a truck that has manufacturing paraphernalia in it with samurai swords. None of the other knives that he was collecting were in the truck. They were at the house. And clearly, there's—I mean, you just—nobody drives with those in their truck, unless they're going to a show or something like that. You don't keep your collection in your truck, especially when the rest of your knives are at your house.
>
> And in terms of the timing, they were in the truck while Mr. Fisher and his pals were attempting to steal anhydrous ammonia to make methamphetamine. It's not uncommon for meth manufacturers to have weapons to protect themselves and their product, and so I don't find that

---

[2]At the sentencing hearing, Fisher's counsel stated that the Cedar Rapids police found "over 70 knives" during a "raid on the defendant's house in February of 2009." He referred to them as part of Fisher's "collection." The PSR did not mention these knives among the items recovered during the February 10, 2009 search; they were not introduced as evidence at the hearing; and they did not serve as a basis for any enhancement.

it's clearly improbable that the samurai sword possession was connected with his offense and relevant conduct . . . .

In addition to applying the two-level dangerous weapon enhancement, the district court granted the recommended three-level reduction for acceptance of responsibility. Finally, the district court granted the government's motion for a two-level downward departure for providing substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1.

Finally, the district court noted that it would have sentenced Fisher to the same term of imprisonment regardless of whether the two-level dangerous weapon enhancement should apply. Not accounting for the two-level substantial assistance departure, the court stated:

> First of all, 235 [months] would have been the—the overlap sentence for the offense. Had I not scored the swords, he would have been a 33/4 [offense level/criminal history category]. And had—and scoring of the swords, he was a 35/4. So the Court would have sentenced him at 235 months in any event, which is the high end of 33/4 and the low end of 35/4—the high end of 33/4 and the low end of 35/4.

Consistent with this statement and after accounting for the two-level substantial assistance departure, the district court sentenced Fisher to 188 months, which was the point where the two Guidelines ranges—with and without the dangerous weapons enhancement—overlapped.

## II. *Discussion*

On appeal, Fisher argues that the district court clearly erred in finding that it was not clearly improbable that the samurai swords were connected to his drug offense, and, thus, he contends that the court erroneously applied the sentencing enhancement under U.S.S.G. § 2D1.1(b)(1). Fisher agrees that he possessed the

swords and does not dispute that these samurai swords can be considered "dangerous weapons." Instead, he argues that the government failed to produce evidence that they were connected to his methamphetamine manufacturing activities (e.g., by "brandish[ing]" the swords or having them "in [his] hands during any methamphetamine-related activity"). Further, he argues that he was merely a knife collector and had obtained the swords shortly before November 19, 2008, for his collection.

We review the district court's interpretation of the Guidelines de novo and its factual findings for clear error. *United States v. Vickers*, 528 F.3d 1116, 1120 (8th Cir. 2008). A factual finding that a weapon was connected to the drug offense will only be reversed "if the entire record definitely and firmly establishes that a mistake has been made." *United States v. Anderson*, 618 F.3d 873, 879 (8th Cir. 2010).

The advisory Sentencing Guidelines provide for a two-level enhancement for drug offenses when "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Application Note 3 to this enhancement states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." The government bears the burden of proving that an enhancement should apply to the defendant's sentence. *United States v. Peroceski*, 520 F.3d 886, 889 (8th Cir. 2008). Thus, in the case of § 2D1.1(b)(1), "the government must prove two things—(1) the [weapon] was possessed and (2) it was not clearly improbable that the weapon was connected to the drug offense." *Anderson*, 618 F.3d at 880. Here, Fisher does not dispute that he possessed the samurai swords. He argues only that the district court clearly erred in finding that "it was not clearly improbable that the weapon was connected" to his methamphetamine manufacturing offense.

Although the government must prove that it was not clearly improbable that the weapon was connected to the drug activity, we have recognized that "[t]his Guidelines

enhancement creates a very low bar for the government to hurdle." *Id.* at 882. For example, we have long held that the government can satisfy its burden by "establish[ing] that 'a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant.'" *United States v. Burling*, 420 F.3d 745, 750 (8th Cir. 2005) (quoting *United States v. Atkins*, 250 F.3d 1203, 1214 (8th Cir. 2001)); *see also United States v. Payne*, 81 F.3d 759, 763 (8th Cir. 1996) (applying the same test). The government does not have to produce evidence showing that the defendant "used or even touched a weapon." *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000) (per curiam). Instead, "[e]vidence that the weapon was in the same location as drugs or drug paraphernalia usually suffices." *Id.*

In a factually similar case, we upheld the district court's decision to apply an enhancement under § 2D1.1(b)(1) when the defendant had a machete in the vehicle that he used to transport materials for manufacturing methamphetamine. *Burling*, 420 F.3d at 750. The weapon was "partially hidden between the seat" and "within reaching distance from the driver's seat." *Id.* Although the defendant only disputed whether his machete was a "dangerous weapon," we found no clear error because "the machete serves a dual purpose—a weapon, or a harvesting tool." *Id.* Under those circumstances, we noted that "it is not clearly improbable that the machete was connected to [the defendant's] attempt to manufacture methamphetamine." *Id.*

The district court did not clearly err by finding that it was not clearly improbable that the samurai swords were connected to Fisher's methamphetamine manufacturing activity. The PSR[3] and the government's exhibits at the sentencing hearing showed that Fisher had the samurai swords in the backseat of his truck on November 19, 2008, when Fisher attempted to steal anhydrous ammonia in order to

---

[3]Fisher did not object to the facts contained in the PSR describing the November 19, 2008 incident when the samurai swords were found, and thus, these facts can be accepted as true for sentencing purposes. *See United States v. Davis*, 583 F.3d 1081, 1095 (8th Cir. 2009).

manufacture methamphetamine. As in *Burling*, Fisher could have easily accessed the swords. Moreover, several other items used to manufacture methamphetamine were located in Fisher's truck along with the swords. Thus, Fisher, the swords, and the drug-related items and activities were very closely related in space and time to one another. The court did not have to find that Fisher ever "brandished" or otherwise used the swords. In addition, as in *Burling*, the district court discounted Fisher's alternative explanation for the swords' presence, stating that, although Fisher collected knives, he did not carry his knife collection in his truck, especially while attempting to steal materials to make methamphetamine. Accordingly, we conclude that the district court correctly found that it was not clearly improbable that the swords were connected to Fisher's methamphetamine manufacturing activity.

Even if Fisher could show that the district court clearly erred, this error would be harmless. Errors in the application of the Guidelines do not require a remand for resentencing when the error is harmless. *United States v. Johnston*, 533 F.3d 972, 978 (8th Cir. 2008). "Incorrect application of the Guidelines is harmless error where the district court specifies the resolution of a particular issue did not affect the ultimate determination of a sentence." *United States v. Straw*, 616 F.3d 737, 742 (8th Cir. 2010). For example, an error might be harmless "where the resulting sentence lies in the overlap between the correct and incorrect guidelines range." *Johnston*, 533 F.3d at 978 (quotation and citation omitted). Under those circumstances, however, "to support a finding of harmless error, the record clearly must show not only that the district court intended to provide an alternative sentence, but also that the alternative sentence is based on an identifiable, correctly calculated guidelines range." *Id.* (quotation and citation omitted).

In the present case, the district court sentenced Fisher to 188 months' imprisonment, the point at which the Guidelines ranges with and without the dangerous weapon enhancement overlapped. The transcript from the sentencing

hearing shows that the district court would have given Fisher the same sentence whether it applied the enhancement. The court stated:

> First of all, 235 [months] would have been the—the overlap sentence for the offense. Had I not scored the swords, he would have been a 33/4 [offense level/criminal history category]. And had—and scoring of the swords, he was a 35/4. So the Court would have sentenced him at 235 months in any event, which is the high end of 33/4 and the low end of 35/4—the high end of 33/4 and the low end of 35/4.

Although the ranges described in this statement did not account for the two-level downward departure for providing substantial assistance, the district court correctly calculated both Guidelines ranges. Before applying the § 5K1.1 departure, the range would have been 188 to 235 months without the dangerous weapon enhancement and 235 to 293 months with the enhancement. After applying the departure, the range would have been 151 to 188 months without the dangerous weapon enhancement and 188 to 235 months with the enhancement. The district court sentenced Fisher to 188 months, and the record indicates that the court would have given this sentence with or without the dangerous weapon enhancement. Thus, even if Fisher could show error in applying the enhancement, such error would be harmless.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____