# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3101
_____

United States of America

*Plaintiff - Appellee*

v.

Bradley R. Ready

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau
_____

Submitted: September 22, 2023
Filed: December 11, 2023
[Published]
_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.
_____

PER CURIAM.

Bradley Ready pleaded guilty to possession with intent to distribute 50 grams or more of a methamphetamine mixture, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and possession of a firearm as an unlawful user of a controlled substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). He appeals his sentence. We affirm.

I.

On September 19, 2021, law enforcement officers executed a search warrant at Ready's residence. During the search, the following items were seized: drug paraphernalia; four digital scales; a loaded hunting rifle inside a locked gun safe; and three plastic bags of methamphetamine totaling 107 grams, some of which was found inside a separate, locked safe on top of the gun safe.

In January 2022, Ready was charged in a two-count indictment based on the methamphetamine and rifle seized from his home during the September 2021 search. Ready pleaded guilty to both counts pursuant to a written plea agreement. In the Presentence Investigation Report (PSR), the U.S. Probation Office recommended grouping the drug count and the gun count for Guideline calculation purposes. It also recommended applying a two-level enhancement pursuant to United States Sentencing Guidelines (USSG) § 2D1.1(b)(1) (2021) because "[a] dangerous weapon was possessed."

Ready objected to the enhancement. In response, the government noticed its intent to call two witnesses. The first witness, Officer Matthew Kassing, was involved in a traffic stop of Ready's car on September 7, 2021, during which law enforcement seized a user-amount of methamphetamine and a loaded pistol, which were on Ready's person.[1] The second witness, Sergent Mark McClendon, participated in the search of Ready's residence on September 19, 2021. Ready moved to exclude only Officer Kassing's testimony, on the grounds that the

_____

[1]On September 7, 2021, Missouri state troopers followed Ready from a local corner store that they were surveilling for illegal drug activity. After initiating a traffic stop on Ready's vehicle, Ready admitted he had a loaded pistol and ammunition inside his car. Officers also found a pill bottle containing a user-amount of methamphetamine.  Ready was arrested and charged with felony possession of methamphetamine. At the time of the instant federal sentencing, his state charges remained pending. At sentencing, Ready did not contest the relevant facts as summarized in his PSR.

September 7 traffic stop was not relevant conduct pursuant to USSG § 1B1.3(a)(2), and thus could not be considered in determining whether the dangerous weapon enhancement applied. The government countered, clarifying that it was not offering evidence of the drugs and pistol seized on September 7 as relevant conduct under the Guidelines. Rather, it intended to offer this evidence to support its position that the rifle seized from Ready's residence on September 19 warranted the two-level enhancement for possession of a dangerous weapon under § 2D1.1(b)(1).

The district court[2] denied Ready's motion to exclude Officer Kassing's testimony. As an initial matter, the court queried whether the evidence seized on September 7 might indeed be "part of the same course of conduct or common scheme or plan as the offense of conviction" under § 1B1.3(a)(2) and its commentary. But the court concluded that it did not need to decide that issue, because the September 7 evidence was relevant to Ready's motive and intent for possessing the rifle on September 19. After hearing and considering the evidence, the district court overruled Ready's objection, applied the dangerous weapon enhancement, and concluded Ready was not eligible for relief under the safety valve. See 18 U.S.C. § 3553(f)(2); USSG § 5C1.2.

On appeal, Ready raises two issues. First, he argues that the district court erred when it applied the § 2D1.1(b)(1) enhancement for possession of a dangerous weapon. Second, he argues the district court applied the wrong standard for determining whether he was eligible for relief under the safety valve. We address each argument in turn.

II.

"We review the district court's findings of fact for clear error and its application of the guidelines de novo." United States v. Renteria-Saldana, 755 F.3d

---

[2]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

856, 858–59 (8th Cir. 2014) (citing United States v. Anderson, 618 F.3d 873, 879 (8th Cir. 2010)); see also United States v. Maxwell, 61 F.4th 549, 561 (8th Cir. 2023) ("We review the district court's factual finding that a defendant possessed a firearm while committing a drug-trafficking offense for clear error."). Clear error occurs when "the entire record definitely and firmly establishes that a mistake has been made." Anderson, 618 F.3d at 879 (citation omitted).

Pursuant to § 2D1.1(b)(1), a defendant's base offense level for a drug offense increases by two levels if "a dangerous weapon (including a firearm) was possessed." To support this enhancement, "[t]he government must simply show that it is not clearly improbable that the weapon was connected to the drug offense." United States v. Peroceski, 520 F.3d 886, 889 (8th Cir. 2008) (noting that for this "particular enhancement . . . the guidelines reduce the quantum of proof necessary to make out a case for its application"). But cf. USSG § 2D1.1, comment. (n.11) (explaining that "the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet"). "[The] enhancement creates a very low bar for the government to hurdle." Anderson, 618 F.3d at 882.

First, Ready argues that the district court erred when it found his prior arrest, which involved possession of a pistol, was "relevant conduct." See United States v. Zerba, 983 F.3d 983, 986 (8th Cir. 2020) ("'Relevant conduct' is a term of art that is defined with precision in the Sentencing Guidelines."). But the district court explicitly declined to make such a finding. Instead, it found that evidence of Ready's possession of both a pistol and a user-amount of methamphetamine on September 7 was relevant to establish the nature of the connection between the rifle and the drugs found in his bedroom twelve days later.

Next, Ready argues that it was "clearly improbable" that the rifle found in his bedroom was connected to the distribution of methamphetamine from his home. Ready admitted that he had a distribution quantity of methamphetamine in his bedroom at the time of the search. The gun safe, where the loaded rifle was found,

was also in Ready's bedroom. And the safe that stored the methamphetamine was sitting directly on top of the safe containing the rifle.

Ready points out that the gun was an older hunting rifle, and not one "typically carried to protect illegal narcotics." The district court recognized that "in normal times," Ready may have used the rifle "for other purposes." But given the "very short period of time between" September 7, when Ready's pistol was seized from him, and September 19, when Ready was actively engaged in the "distribution and the storage of methamphetamine [at] his residence," the district court found that it was not clearly improbable that on September 19 the rifle was connected to his drug offense. We see no clear error in this conclusion.

III.

Ready also argues that the district court failed to apply the proper standard when determining his eligibility for safety-valve relief, specifically, whether he "possess[ed] a firearm or other dangerous weapon" under USSG § 5C1.2(a)(2). 18 U.S.C. § 3553(f) (establishing safety-valve relief and enumerating the requirements for eligibility). Because Ready did not raise this argument before the district court, we review for plain error. United States v. Butler, 743 F.3d 645, 647 (8th Cir. 2014) (citations omitted).

"The defendant has the burden to show that he qualifies for safety[-]valve relief." United States v. Trujillo-Linares, 21 F.4th 527, 529 (8th Cir. 2021) (citation omitted). The district court carefully summarized Ready's safety-valve argument, and found that "under the[] circumstances," Ready would not be able "to demonstrate that all five criteria under section 5C1.2 can be met." To support its conclusion, the district court simply relied on its factual findings regarding the § 2D1.1(b)(1) dangerous weapon enhancement to determine whether he qualified for safety-valve relief. We find no error on this point, let alone one that was plain. United States v. Olano, 507 U.S. 725, 731, 734–36 (1993) (establishing standard for plain-error review); United States v. Combs, 44 F.4th 815, 818 (8th Cir. 2022)

("Plain-error review places the ball in [the defendant's] court. He must establish both that the error was 'clear or obvious' and that it 'affected [his] substantial rights.'" (first alteration added) (quoting Molina-Martinez v. United States, 578 U.S. 189, 194 (2016))).

## IV.

The judgment of the district court is affirmed.

_____