# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-1698

_____

United States of America

*Plaintiff - Appellee*

v.

Abel Miranda-Diaz, also known as Baldemar Rodriguez-Zaragoza,
also known as Luis Rodriguez-Vega, also known as El Jefe,
also known as El General, also known as Micho

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri

_____

Submitted: December 11, 2023
Filed: April 3, 2024
[Unpublished]

_____

Before GRUENDER, GRASZ, and KOBES, Circuit Judges.

_____

PER CURIAM.

Abel Miranda-Diaz pled guilty to conspiring to distribute heroin, cocaine, and methamphetamine. After finding his total offense level to be 41 under the United

States Sentencing Guidelines Manual (U.S.S.G. or Guidelines), the district court[1] sentenced Miranda-Diaz to 324 months of imprisonment. Miranda-Diaz appeals his sentence, arguing the district court erred by increasing his offense level under the Guidelines by: (1) two levels for possessing a firearm in connection with the offense; and (2) another two levels because the offense involved manufacturing methamphetamine from unlawfully imported compounds. We affirm.

## I. Background

Over a period of several years, law enforcement investigated a drug-trafficking organization responsible for importing large quantities of methamphetamine, heroin, and cocaine into the United States from Mexico. During its investigation, law enforcement learned Miranda-Diaz distributed illegal drugs.

Using a confidential source, law enforcement coordinated several controlled purchases of methamphetamine from one of Miranda-Diaz's co-conspirators. Law enforcement surveilled a house in Kansas City, Kansas, which Miranda-Diaz owned. On multiple occasions, they observed Miranda-Diaz present while co-conspirators transported bags of methamphetamine from the house to their vehicles.

Later, law enforcement searched another residence—a mobile home with an attached garage—in Independence, Missouri. This search, done with the consent of the owner, revealed a large-scale methamphetamine laboratory in the garage. Law enforcement found heroin, documentation and ledgers pertaining to drug sales, an unloaded sawed-off shotgun, and various ammunition. Additionally, Miranda-Diaz was found hiding under the premises.

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

While being questioned, Miranda-Diaz admitted he maintained the Kansas City and Independence residences to store methamphetamine. He said he was paid $2,000 per load of illegal drugs, plus the cost of rent for the two residences and other expenses. He also admitted to helping unload shipments of methamphetamine concealed in various parts of automobiles. Miranda-Diaz maintained that he trafficked drugs only because a cartel based in his home state of Michoacán, Mexico, threatened to harm him and his family if he did not participate. The government charged Miranda-Diaz with conspiring to distribute 1 kilogram or more of heroin, 5 kilograms or more of cocaine, and 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846. Miranda-Diaz pled guilty.

Prior to sentencing, the United States Probation Office prepared a presentence investigation report, calculating a total offense level of 41 and a criminal history category of I. This yielded an advisory Guidelines sentence of 324 to 405 months of imprisonment. Miranda-Diaz objected to enhancements for possessing a firearm and importing methamphetamine. *See* U.S.S.G. § 2D1.1(b)(1), (5). He argued the total offense level should be 37 and urged a sentence of 120 months of imprisonment. The district court denied this request and imposed a 324-month sentence. Miranda-Diaz appealed.

## II. Analysis

On appeal, Miranda-Diaz argues the district court erred when calculating the advisory sentencing range. We review application of the Guidelines de novo and findings of fact for clear error. *United States v. Rivera-Mendoza*, 682 F.3d 730, 733 (8th Cir. 2012). Under the clear error standard, we will reverse only when we have a "definite and firm conviction" the district court has made a mistake. *Id.*

First, Miranda-Diaz contends the district court erred by applying a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) because the firearm, although found near

a drug-trafficking operation, was not found on his person or in his immediate vicinity and was unloaded. We disagree.

A defendant's base offense level must be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of the offense. U.S.S.G. § 2D1.1(b)(1). The commentary to this section explains "the enhancement should be applied if the weapon was present, unless it is *clearly improbable* that the weapon was connected with the offense." *Id.*, cmt. n.11(A) (emphasis added). Possession of the firearm may be "actual or constructive." *United States v. Shelby*, 844 F. App'x 932, 935 (8th Cir. 2021).

To prove the defendant possessed a firearm, "the government need not prove ownership of either the weapon or the premises on which it is found for a § 2D1.1(b)(1) enhancement to apply." *United States v. Anderson*, 618 F.3d 873, 879 (8th Cir. 2010). Neither must a defendant be physically in contact with the weapon for the government to prove a connection between the weapon and the offense. *United States v. Torres*, 409 F.3d 1000, 1003 (8th Cir. 2005) (concluding "[t]emporal and spatial nexus among the weapon, defendant, and drug-trafficking activity" were sufficient to increase the base offense two levels). Accordingly, "[e]vidence that the weapon was found in the same location as drugs or drug paraphernalia usually suffices." *Anderson*, 618 F.3d at 881 (quoting *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000)).

The district court determined the enhancement applied because Miranda-Diaz admitted he used the residence to store drugs, and he was found hiding under the garage where the drugs, the gun, and the ammunition were found. Given the "well-known tendency of drug criminals to use firearms in connection with their drug activities," it is not "clearly improbable" the firearm was connected with the offense. *Id.* at 881–82. Whether Miranda-Diaz owned the firearm or the residence where it was recovered is not dispositive under our precedent. *See Torres*, 409 F.3d at 1003.

-4-

Though "mere presence of a firearm is insufficient" for the application of a § 2D1.1(b)(1) enhancement, *United States v. Savage*, 414 F.3d 964, 966 (8th Cir. 2005), we have generally applied the enhancement when a firearm is present near a drug operation. *See Anderson*, 618 F.3d at 881. The firearm here was found in the attached garage of a mobile home used for drug trafficking operations.

Further, the fact the sawed-off shotgun was unloaded has little bearing on the application of the enhancement. The enhancement is applied because of the violence associated with drug traffickers possessing weapons, and not necessarily because the firearm poses immediate danger. *See id.* at 879; U.S.S.G. § 2D1.1, cmt. n.11(A).

In sum, considering the firearm was found in the attached garage of a drug house where Miranda-Diaz was hiding, it was not clearly erroneous for the district court to find he possessed the firearm during the commission of his offense. Therefore, application of the two-level enhancement was appropriate.

We likewise reject Miranda-Diaz's argument the district court procedurally erred by applying a two-level importation enhancement under U.S.S.G. § 2D1.1(b)(5). A two-level enhancement applies if "the offense involved the importation of . . . methamphetamine or the manufacture of . . . methamphetamine from listed chemicals that defendant knew were imported unlawfully." U.S.S.G. § 2D1.1(b)(5).

Miranda-Diaz admitted he distributed drugs for a Mexican cartel and assisted the cartel with unloading shipments of drugs out of automobiles, but claims he did not know the drugs were coming from outside the United States. We find this argument unpersuasive. Given Miranda-Diaz's close association with at least one member of a Mexican cartel and his involvement in unloading shipments of methamphetamine, the record sufficiently supports the application of the importation enhancement. *See Rivera-Mendoza*, 682 F.3d at 733–34 (noting communications with Mexican methamphetamine sources supported application of importation enhancement); *United States v. Werkmeister*, 62 F.4th 465, 468–69 (8th Cir. 2023)

(applying § 2D1.1(b)(5) to offenses where defendants were generally "involved" in the importation of methamphetamine). The district court did not clearly err by finding Miranda-Diaz's offense involved the importation of methamphetamine that he knew was imported unlawfully. As such, application of the two-level enhancement was not improper.

### III. Conclusion

For the foregoing reasons, we affirm Miranda-Diaz's sentence.

_____