# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-2170
_____

United States of America

*Plaintiff - Appellee*

v.

Ulysses Bush

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: September 15, 2025
Filed: October 7, 2025
_____

Before SMITH, ARNOLD, and SHEPHERD, Circuit Judges.
_____

ARNOLD, Circuit Judge.

After Ulysses Bush pleaded guilty to distributing a mixture or substance containing a detectable amount of methamphetamine, *see* 21 U.S.C. § 841(a)(1),

(b)(1)(C), the district court[1] sentenced him to 240 months in prison. He maintains on appeal that the court erroneously applied two enhancements when calculating the sentence that the Guidelines recommended and imposed a substantively unreasonable sentence. We affirm.

Authorities began investigating Bush after they received information that he and his girlfriend were selling methamphetamine—a fact confirmed by a confidential source who bought methamphetamine from them on multiple occasions. During their investigation, authorities also learned of a storage unit rented in Bush's girlfriend's name. A search of this unit uncovered drugs and drug paraphernalia, including over 180 grams of methamphetamine and nearly 350 fentanyl pills divided into baggies, along with a handgun rolled up in a bulletproof vest on a shelf above some drug paraphernalia.

At sentencing, the district court applied a two-level enhancement because Bush had possessed a dangerous weapon—the handgun found in the storage unit. *See* USSG § 2D1.1(b)(1). That enhancement applies when a weapon is present, "unless it is clearly improbable that the weapon was connected with the offense." *See id.* cmt. n. 11(A). To clear this "very low bar," the government can show merely that the weapon was found in the same location as drugs or drug paraphernalia. *See United States v. Ashburn*, 865 F.3d 997, 999–1000 (8th Cir. 2017). "We will not reverse the district court's findings that defendants possessed firearms for the purposes of 2D1.1(b)(1) unless they are clearly erroneous." *United States v. Cosey*, 602 F.3d 943, 948 (8th Cir. 2010) (per curiam).

Bush contends that the enhancement does not apply because "the firearm was not found on Mr. Bush's person but in a storage facility that was leased and

---

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

controlled by" his girlfriend, not him. We have said, though, that the defendant need not have used or even touched the weapon for the enhancement to apply, so long as the defendant had constructive possession of it. *See United States v. Anderson*, 618 F.3d 873, 880 (8th Cir. 2010); *see also Ashburn*, 865 F.3d at 1000. The government can demonstrate constructive possession by showing that Bush exercised dominion or control over the premises where the gun was found. *See Anderson*, 618 F.3d at 880. We have observed that a defendant can constructively possess a weapon found "in a storage facility rented in the name of someone other than the defendant." *See id.*

That is the case here. The district court found on an ample record that Bush and his girlfriend were working together to distribute drugs. An officer testified at the sentencing hearing (credibly, according to the district court) that he observed Bush and his girlfriend at the storage unit together and that he saw Bush "going in and out of" it. He also said that Bush drove to the facility with his girlfriend in a separate car following behind him, essentially leading the way into the storage facility—a fact the district court found significant. The officer also reported that authorities obtained a warrant allowing them to track how often Bush's cell phone was at the storage facility, and that "during the course of [the] ping warrant" the phone emitted a signal from the storage facility on fourteen different occasions, often for extended periods of time. It is undisputed, moreover, that officers found in the unit "multiple items with Bush's name on it" as well as a suitcase with men's clothing (and drugs) inside. Other evidence connected Bush to the storage unit, but suffice it to say that the district court did not clearly err in finding that "Bush had the ability to go to that storage unit anytime that he wanted" and had "ready access, and importantly control" over it, meaning that he had constructive possession of the firearm found inside it and that the decision to rent the unit in the girlfriend's name "was an intentional artifice." Since the district court provided more than enough support for its finding that Bush constructively possessed the firearm, and given the close temporal and spatial relationship between Bush, the firearm, and the drugs, *see United States v. Coleman*, 97 F.4th 566, 568–69 (8th Cir. 2024) (per curiam), we discern no clear error in the

court finding that it was not clearly improbable that the firearm was connected to Bush's drug trafficking. The court appropriately scored the enhancement.

The district court also applied a two-level enhancement because Bush had "maintained a premises for the purpose of manufacturing or distributing a controlled substance." *See* USSG § 2D1.1(b)(12). This enhancement applies when the defendant knowingly maintains a building, room, or enclosure for the purpose of manufacturing or distributing a controlled substance. *See United States v. Hernandez Lopez*, 24 F.4th 1205, 1208 (8th Cir. 2022). "[M]aintaining a premises for the purpose of drug distribution includes storage of the drugs." *See id.* The illicit purpose need not be the sole purpose for which the defendant maintains the premises, though it must be a primary purpose and not an incidental one. *See id.* "We review factual findings to support an enhancement for maintaining a drug premises under § 2D1.1(b)(12) for clear error." *See id.*

Bush's contentions with respect to this enhancement resemble those he advanced with respect to the dangerous-weapon enhancement. He tries to distance himself from the storage unit, but for reasons we've already explained, the district court didn't clearly err in determining that Bush had total, unfettered access to the unit where he and his girlfriend stored drugs and drug paraphernalia. Bush also submits that the primary purpose of the unit was to store belongings and not drugs. Defendants who use residences as stash houses have made similar arguments, and we've said the enhancement applies so long as the "defendant uses the premises for the purpose of substantial drug-trafficking activities." *See, e.g.*, *United States v. Miller*, 698 F.3d 699, 707 (8th Cir. 2012). Bush stored substantial quantities of methamphetamine and fentanyl, visited the location frequently, and even got caught with eighteen baggies of drugs right after leaving the unit. That Bush and his girlfriend also used the unit to store belongings doesn't mean they can escape the enhancement. *See United States v. Hollins*, 2025 WL 1898030, at *6 (6th Cir. July 9,

2025) (unpublished). The district court committed no clear error in concluding that the enhancement applied.

Finally, Bush contends that his 240-month sentence is unreasonable. As the district court pointed out, though, Bush would have faced a recommended sentence of 292–365 months if his statute of conviction had not capped his sentence at 240 months. The district court also offered several reasons why 240 months was appropriate, including Bush's extensive criminal history, the types and amount of drugs involved, and Bush's continued criminal activity even after he had posted bond following an earlier arrest. Bush asserts that the district court should have given more weight to certain mitigating personal circumstances, but the district court expressly considered those circumstances and explained why a 240-month sentence was nonetheless appropriate. The district court did not abuse its sentencing discretion.

Affirmed.

_____